IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
_____ DIVISION

| | | |
|---|---|---|
| J.F., an individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Docket No.: _____ |
| v. | ) | |
| | ) | *Plaintiff Demands* |
| LANDMARK HOSPITALITY, INC; | ) | *a Trial by Jury* |
| CHHITUBHAI G DAKORIYA; AND | ) | |
| RAJESH M PATEL, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Matthew B. Stoddard
THE STODDARD FIRM
1534 N Decatur Road
Atlanta, GA 30307
P: 470-467-2200
F: 470-467-1300
matt@legalhelpga.com

**Attorney for Plaintiff**

# TABLE OF CONTENTS

I.     Introduction...........................................................................................................3

II.    Procedural Issues.............................................  .................................................6

III.   Facts.....................................................................................................................8

       A.  Plaintiff's Trafficking Period..........................................................................8

       B.  Plaintiff's Trafficking at The Motel 6 Greensboro.....................................10

       C.  Information Regarding Motel 6, and Plaintiff's
           Experience was Not Unique.........................................................................13

       D.  Common Policies and Procedures...............................................................14

       E.  Industry Knowledge....................................................................................17

       F.  Defendants' Knowledge as to Plaintiff........................................................22

IV.    Count 1: TVPRA Civil Beneficiary Claims.......................................................25

V.     Count 2: Premises Liability Law.......................................................................29

VI.    Causation And Damages....................................................................................32

VII.   Jury Trial...........................................................................................................34

VIII.  Prayer For Relief................................................................................................34

2

# I. INTRODUCTION

1.

This case involves the sex trafficking of a minor – namely Plaintiff J.F. – at a notorious Greensboro motel in October of 2015.

2.

The motel at-issue is the Motel 6, located at 2838 S Elm-Eugene St Apt. 214, Greensboro, NC 27406 (the "Motel", "Motel 6 Greensboro," or "Defendants' Motel").

3.

The Motel 6 Greensboro was a known hotspot for drugs, prostitution, sex trafficking, and violent crime.

4.

Defendants were aware of their reputation and, instead of acting, chose to do nothing; thereby creating a safe space for those seeking to commit crimes without fear of detection or consequence. Defendants then profited off the increased room rentals this system created (i.e. creating a safe space for drug trafficking, human trafficking, commercial sex, and other crime).

5.

At all relevant times, Defendant Landmark Hospitality, Inc. owned, operated, and managed the Motel 6 Greensboro.

6.

Upon information and belief, Defendants were warned on numerous occasions prior to and during Plaintiff's trafficking by law enforcement, City of Greensboro officials, news articles, reporters, and the overwhelming and unignorable presence of crime at the Motel that the Motel 6 Greensboro was a haven for drugs, prostitution, sex trafficking, and other violent crime.

7.

Given the above, Defendants knew or should have known that changes had to be made at the Motel 6 Greensboro. However, instead of contacting law enforcement, hiring appropriate security, or taking other reasonable measures to deter crime, Defendants chose to profit from the room revenues brought in by those seeking to commit crime(s), and to provide cover for criminals seeking a place free of repercussion(s).

8.

As a direct and foreseeable result of Defendants' actions and inactions, the then-minor Plaintiff in this case was brought to Defendants' Motel to be trafficked, beaten, threatened, and repeatedly raped in October of 2015. Plaintiff was taken to Defendants' Motel to be repeatedly raped, threatened, beaten, and sold for sex.

9.

Defendants had every reason to know about what was happening to this specific Plaintiff and to facilitate her trafficking. When Plaintiff was brought to Defendants' Motel, the following occurred:

a. Defendants' front desk employee steered Plaintiff and her trafficker to areas of the Motel where law enforcement was less likely to be present;

b. The Motel agreed that there would be no housekeeping to Plaintiff's room for the entirety of her stay;

c. Instead, the trafficker himself would pick up towels and sheets multiple times each day for multiple days in a row in the lobby;

d. The trafficker left trash cans full of used condoms and empty bottles of lubricant along with tips for housekeeping;

e. Many men per night would drive past the front office, park in the parking lot, and stay for only 15 to 20 minutes before leaving and driving past the front desk again;

f. The trafficker forced Plaintiff, who appeared to be under the age of 18, to wear revealing clothing and keep her head down as she silently passed Motel staff;

g. The trafficker would loudly beat, threaten, bruise, and argue with Plaintiff such that motel employees and others could hear and see said events and injuries and then the staff would continue to rent the room to the trafficker;

h. The trafficker would regularly and repeatedly wait outside Plaintiff's room to collect money from "johns" visiting Plaintiff for sex; and

i. Upon information and belief, the Motel staff would often not call police despite have strong suspicion that crimes were occurring at the property.

10.

In short, Defendants profited not just from the room rentals of the unsavory element they attracted with their policies, Defendants also knew and had every reason to know that they were profiting from the sex trafficking of this then-minor Plaintiff, and then with that knowledge, the Defendants aided in providing Plaintiff's trafficker a safe space to operate that catered to his needs. As such, Defendants are liable for Plaintiff's damages under 18 U.S.C. § 1595(a) (the "TVPRA") and North Carolina's premises liability law.

## II. PROCEDURAL ISSUES AND PARTIES

11.

Given the nature of the case, J.F. is identified in this Complaint by her initials to prevent public disclosure of her name. Plaintiff's counsel has either previously disclosed full names to defense counsel or will immediately upon identification of defense counsel. When filing this Complaint, Plaintiff's counsel also filed a Motion for Protective Order seeking Court permission for Plaintiff to proceed anonymously.

12.

J.F. is a natural person who is currently a resident and citizen of North Carolina.

13.

Defendant Landmark Hospitality, Inc. is a North Carolina limited liability company based in Greensboro, North Carolina and whose members also reside in Guilford County, North Carolina.

14.

Defendant Landmark Hospitality, Inc. can be served through its registered agent, Chhitubhai G Dakoriya, 1118 Summit Avenue, Greensboro, NC 27405.

15.

Defendant Landmark Hospitality, Inc. was properly served with process in this matter.

16.

Defendant Landmark Hospitality, Inc. is subject to the jurisdiction and venue of this Court.

17.

Defendant Chhitubhai G Dakoriya, an individual, was the president and part owner of Landmark Hospitality, Inc. and can be served at 1118 Summit Avenue, Greensboro, NC 27405.

18.

Defendant Chhitubhai G Dakoriya was properly served with process in this matter.

19.

Defendant Chhitubhai G Dakoriya is subject to the jurisdiction and venue of this Court.

20.

Defendant Rajesh M Patel, an individual, was the secretary and part owner of Landmark Hospitality, Inc. and can be served at 1711 Gracewood Drive, Greensboro, NC 27408.

21.

Defendant Rajesh M Patel was properly served with process in this matter.

22.

Defendant Rajesh M Patel is subject to the jurisdiction and venue of this Court.

23.

Jurisdiction is proper in this Court under 28 U.S.C. § 1331 (federal question jurisdiction) because this matter concerns the Trafficking Victims Protection Reauthorization Act ("TVPRA") a/k/a 18 U.S.C. § 1595, *et sec*., which is/are law(s) of the United States.

24.

Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in Guilford, North Carolina which is within the Middle District of North Carolina. *See* 28 U.S.C. § 1391.

### III. FACTS

**A. Plaintiff's Trafficking Period.**

25.

In 2015, Plaintiff was 14 years old.

26.

In 2015, Plaintiff was living at Hope House in Gastonia, North Carolina. There, she was approached by an 18-year-old girl aging out of the group home.

27.

During Plaintiff's conversation with the girl, the girl told Plaintiff "There was a way for her [Plaintiff] to make some money."

28.

Plaintiff was not sure what the girl meant, but – accepting the offer – Plaintiff called her friend to pick her up from the group home.

29.

Plaintiff's friend picked Plaintiff up and drove her to meet up with the 18-year-old girl and an older man named Christopher Spinks.

30.

Immediately, Spinks gave Plaintiff drugs (e.g., molly rocks) and demanded she have sex for money. Plaintiff objected to this and stated that she did not want to.

31.

Despite her objection, Spinks became aggressive towards Plaintiff. He beat and threatened Plaintiff. Spinks' "friends" then raped Plaintiff.

32.

After about four days of this cycle at the Sam's Inn Motel, Spinks moved Plaintiff to the Motel 6 Greensboro (located at 2838 S Elm-Eugene St Apt. 214, Greensboro, NC

27406) where he commanded her to have sex with many strange men per night. If Plaintiff resisted or voiced her objection, she was met with threats of violence or actual violence, which included but were not limited to striking her, throwing things at her, and/or choking her.

33.

In exchange for sex with the then-underaged Plaintiff J.F, the above-mentioned men or "johns" would pay Spinks immediately following their visit or "date" with J.F.

34.

At all times relevant to this Complaint and during Plaintiff's trafficking period, Spinks would keep all of the money J.F. made engaging in commercial sex; he was always watching or within a short distance of Plaintiff; he would threaten her if she were to tell anyone about her situation; he physically harmed Plaintiff by hitting, choking, and throwing things at her when she would not submit to his will or engage in commercial sex; and he would keep J.F. under a cocktail of drugs -- consisting of various pills, alcohol, and powders -- to further keep Plaintiff under control. The use of drugs was also employed to sedate her resistance to having sex with the strange men.

**B. Plaintiff's Trafficking at The Motel 6 Greensboro.**

35.

During Plaintiff's 2015 trafficking, she particularly recalls being taken to Defendants' Motel 6 Greensboro.

36.

In 2015, Plaintiff was at Defendants' Motel for approximately five days.

37.

During this period, the following occurred:

a.  Spinks pulled up to the front desk area and left Plaintiff in the car;

b.  After securing a room, Plaintiff's trafficker took her to a specific room in the back
of the property – away from the front -- where, upon information and belief, the
Defendant steered prostitutes, criminals, and sex trafficking victims.

c.  Plaintiff walked up to her room where she was kept during her stay at the Motel
under the threat of being hit, beaten, or strangled.

d.  On her way to the room, Plaintiff was instructed to keep her head down, keep her
hoodie up covering her face and head, and not speak to anyone – including
Defendants' employees, who she noticed cleaning other rooms within her proximity.

e.  In addition to keeping her head down, when Plaintiff passed Defendants' employees,
she appeared:

   i.    Dressed inappropriately in provocative and revealing clothing (e.g. short,
         tight skirts; very low-cut tops; heels; and other clothing resembling
         lingerie);

   ii.   Displaying bruising and scars;

   iii.  To be under the influence of drugs and/or alcohol; and

   iv.   To be 14 or 15 years old.

f.  During her stay Spinks refused housekeeping services for the entirety of their stay, which resulted in Plaintiff going without housekeeping.

g.  Though they did not get housekeeping services, Plaintiff's trafficker requested new towels and sheets multiple times per day, every day, and – at her trafficker's request – said towels and sheets were left at the room's door.

h.  Because housekeeping had been forgone for days at a time, Plaintiff's trafficker left outside the room trash can(s) full of used condoms and empty bottles of lubricant along with tips for housekeeping.

i.  Plaintiff's trafficker arranged for many men to drive past the front office in clear view of Defendants' employees, park in the parking lot, stay at Defendants' Motel only 15 to 20 minutes while they had sex with J.F., before once again driving past the front desk in clear view as they left.

j.  While each of the many men came to Plaintiff's room to have sex with her, Plaintiff's trafficker would wait outside her room or in the parking lot and collect money from said men upon their leaving, which was in clear view of housekeeping, maintenance staff, and Defendants' cameras around their Motel.

k.  Plaintiff's trafficker would become angry and abusive towards Plaintiff, and the two (2) would yell at each other or fight such that they would be loud, throw things and damage the room, and simply act and yell in a manner that others, including Motel staff, could hear.

38.

Despite the above being noticed by Defendants and their employees either in person or via cameras, Defendants continued to rent rooms to Plaintiff's Trafficker.

39.

After what Plaintiff believes was approximately five days of being trafficked at Defendants' Motel, law enforcement rescued Plaintiff from the Motel and returned her to her parents' care.

**C. Information Regarding Defendants' Motel 6, and Plaintiff's Experience was Not Unique.**

40.

Prior to Plaintiff's trafficking, Defendants were aware of the following about the Motel 6

a. Customers complaints reporting high amounts of drug dealing, prostitution, sex trafficking and violent crime at Defendants' Motel;

b. Online customer reviews reporting high amounts of drug dealing, prostitution, sex trafficking and violent crime at Defendants' Motel;

41.

Plaintiff herself perceived the following while she was at the Motel 6 Greensboro– which upon information and belief was also well known to Defendants' employees at all times relevant to this Complaint:

a. Multiple women soliciting themselves out front of the property and in the parking lot;

b.  Pimps selling drugs in the parking lot;

c.  The smell of marijuana pervasive throughout both the motel and parking lot;

d.  Cars with "johns" coming, going, and passing the front desk after spending only 15 to 20 minutes at the Motel at all hours of the night.  This was not limited to those men coming to have sex with Plaintiff.  Rather, upwards of 10 women and pimps at a time would have more than five (5) men coming and going from the property during peak nights, which created a high traffic environment that no one could miss.

**D. Common Policies and Procedures.**

42.

To facilitate and cater to the criminal element at their Motel, Defendants engaged in the following behaviors and procedures:

a.  Defendants continued to rent room to those (i.e. Spinks) they knew or should have known were engaged in the sex trafficking;

b.  Defendants maintained policies and systems whereby they would not call the police on those they knew or should have known were engaged in the sex trafficking, thereby providing an environment where one could engage in sex trafficking without fear of detection or repercussion(s);

c.  Defendants maintained policies and systems whereby housekeeping services could be suspended, thereby allowing traffickers and other criminals to avoid detection;

14

d.  Defendants maintained policies and systems whereby towels and sheets could be dropped off at a guests' door or picked up in the lobby multiple times per day, many days in a row, without question to allow for johns and traffickers comfort when engaging in commercial sex;

e.  Defendants maintained policies and systems whereby housekeepers would not report the presence of a trashcan(s) full of used condoms and empty bottles of lubricant, and pimps surveilling rooms for weeks on end in exchange for tips;

f.  Defendants maintained policies and systems whereby Defendants did not check all guests' I.D.s at the Motel, thereby allowing women, young girls, and johns to come and go freely from the Motel, which further facilitated pimps (e.g. Spinks) to conduct their business and avoid detection;

g.  Upon information and belief, Defendants maintained policies and systems whereby they would allow guests to pay for rooms day-by-day and in cash to cater to the needs of traffickers like Spinks, who would only deal in cash;

h.  Defendants maintained policies and systems whereby their Wi-Fi could be used to post ads and pictures of women and girls available for sex.  Additionally, Plaintiff noted that Spinks would post ads and pictures of her naked and underaged from Defendants' Motel and, upon information and belief, their Wi-Fi;

i.  Defendants maintained policies and systems whereby staff would not call or report signs of sex trafficking, prostitution, or drug sales for the purpose of

providing a space wherein those engaged in these activities would come back and rent rooms in order to engage in said vices; and

43.

Despite warnings from prior instances of trafficking, customer complaints, and apparent crime on the property that included drug sales in the parking lot, pimps monitoring rooms, and women selling themselves in the parking lot, Defendants did not change their above policies and systems despite the issues at their Motel.

44.

Defendants maintained the policies and systems described above, following those warnings described above, to create an environment of low disruption and detection for criminality, to continue to attract those that would rent rooms to engage in illegal activity (like sex trafficking, drug use, and prostitution), and for the purpose of profiting from those rooms rentals.

45.

Defendants maintained the above policies and systems and provided Spinks a friendly welcome despite numerous warnings and red flags about both Plaintiff individually and the Motel 6 as a whole, thereby facilitating and participating in Plaintiff's sex trafficking, providing a venue where Plaintiff's sex trafficking could occur, and creating a tacit agreement between Defendants and Spinks to profit from a sex trafficking operation that all knew or should have known about.

### E. Industry Knowledge.

46.

Sex trafficking has become a public health crisis that has reached epidemic proportions in the United States. It is now widely recognized, including by Congress and many state legislatures, that combating sex trafficking requires more than just criminal penalties for pimps and sex buyers.

47.

Defendants knew or should have known of the existence and prevalence of sex trafficking at budget motels and its illegality since the passage of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §1581, *et seq*., and publishing of the United Nations' Palermo Protocol to Prevent, Suppress, and Punish Trafficking in Persons, Especially Women and Children, which was also passed in 2000.

48.

Defendants knew or should have known that in 2008, Congress recognized the need to extend liability beyond sex buyers and sellers and intentionally expanded the scope of the TVPRA to reach those who—while not criminally liable under the TVPRA—benefit from participation in a venture that they know or should know engages in sex trafficking.

49.

Defendants knew or should have known that, compared to other types of businesses, hotels play a critical role in sex trafficking ventures and serve as "a particularly attractive site for criminal activity ranging from drug dealing and prostitution to human trafficking.

Offering privacy and anonymity on the cheap, they have been employed as . . . rendezvous sites where child sex workers meet their clients on threat of violence from their procurers[.]" *City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2457 (2015) (Scalia, J., dissenting, joined by Chief Justice Roberts and Justice Thomas).

50.

In 2010 the Department of Homeland Security ("DHS") issued the guidance to hotel companies, entitled Human Trafficking and the Hospitality Industry,[1] which identified a number of warning signs indicating the presence of sex trafficking at hotels. According to DHS, hotel staff can and should be vigilant in observing signs of human trafficking including but not limited to, signs of poor physical appearance (injury, illness, poor hygiene, sleep deprivation, malnourishment), constant monitoring by others, requests for housekeeping and towels without entry into the room, presence of multiple computers or cell phones. Defendants knew or should have known of these warning signs and indicators.

51.

The End Child Prostitution and Trafficking (ECPAT-USA) published list of indicators of human trafficking for hotel staff to recognize and combat trafficking, such as: paying for rooms using cash, paying for multi-day stays one day at a time, escorts various men into the room and lingers until they leave, watching the door, room is frequented by different men, insists on little or no housekeeping, excessive requests for towels and sheets, wearing the same attire or attire that is revealing or inappropriate for the

---

[1] https://www.dhs.gov/blue-campaign/hospitalityindustry.

weather, excess lingerie, discarded condoms and lubricants, use of websites with adult classified ads and possessing few personal belongings. Defendants knew or should have known of these warning signs and indicators.

52.

DHS has also previously provided education and guidance for the hospitality industry under the Blue Campaign, because of the hospitality industries' unique situation to identify and prevent of sex trafficking. Said guidance includes having hotel staff be vigilant for the following:[2]

a.  persons who show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

b.  persons who lack freedom of movement or are constantly monitored;

c.  persons who have no control over or possession of money or ID;

d.  persons who dress inappropriately for their age or have lower quality clothing compared to others in their party;

e.  requests for room or housekeeping services (additional towels, new linens, etc.), but denial of hotel staff entry into the room;

f.  the presence of multiple computers, cell phones, pagers, credit card swipers, or other technology in the room;

g.  extended stay with few or no personal possessions in the room;

---

[2] https://www.dhs.gov/blue-campaign/publication/blue-campaign-toolkits-and-guides.

h.     excessive amounts of sex paraphernalia in rooms (condoms, lubricant, lotion, etc.);

i.     the same person reserves multiple rooms;

j.     a room is rented hourly, less than a day, or for an atypical extended stay;

k.     attempts to sell items to or beg from patrons or staff;

l.     cars in the parking lot regularly parked backward, so the license plates are not visible;

m.     loitering and solicitation of male patrons; and

n.     persons asking staff or patrons for food or money.

Defendants knew or should have known of these warning signs and indicators.

53.

Defendants knew or should have known that commercial sex in a hotel environment, involving a "pimp," often involves sex trafficking.

54.

At all times relevant to this Complaint, the hospitality industry, which includes Defendants' hotels and Motels, knew or should have known about its unique status to observe sex trafficking and the common signs thereof.

55.

At all times relevant to this Complaint, the hospitality industry, which includes Defendants' hotels and Motels, knew or should know to implement reasonable training, policies, and procedures to observe for signs of sex trafficking.

56.

At all times relevant to this Complaint, the hospitality industry, which includes Defendants' hotels and Motels, knew or should know to be vigilant for the above signs of sex trafficking and to take reasonable measures against the same (e.g. hire security, create policies of reporting crime, not accepting cash payments for rooms, training staff to notice signs sex trafficking, requiring I.D. for all guests, implement card readers, and implement policies whereby housekeeping must enters rooms after 48 hours and place new sheets and towels in rooms).

57.

Defendants knew or should have known that, without a venue, or crime scene, a sex trafficking venture ceases to exist.

58.

At all relevant times, Defendants knew or should have known that there was a heightened risk that sex trafficking could take place at its facility as compared to taking place at other locations because of: (i) extensive private sector / non-profit publications informing the public that motels were a hotbed of sex trafficking, (ii) extensive federal / state / local government testimony and press quotations informing the public that low income motels were a particular hotbed of sex trafficking, and (iii) the general nature of Defendants' business involving renting private rooms cheaply by the day with each room having a bed where trafficking could occur.

**F. Defendants' Knowledge as to Plaintiff.**

59.

Defendants directed, operated, supervised, monitored, managed, and/or employed all employees, managers, housekeepers, and other staff at the Hotel at all relevant times, giving Defendants specific and direct knowledge of sex trafficking, including the sex trafficking that victimized J.F., and other crimes at the Motel during the relevant period.

60.

Defendants utilized, monitored, and reviewed cameras on at the Motel at all relevant times during the Complaint.

61.

Defendants and their employees were warned by online reviews, customer complaints, and news reporters about the high presence of drugs sales, prostitution, and violent crime at their Motel prior to Plaintiff's trafficking period.

62.

Defendants knew and should have known that other women displayed the same signs of trafficking at their Motel prior to Plaintiff being there. However, Defendants similarly profited from said women.

63.

Defendants knew and should have known that Plaintiff displayed the following signs of sex trafficking at all times relevant to this Complaint:

a. Plaintiff did not interact with Defendants and would keep her head down when in view of Defendants' employees;

b. Plaintiff was dressed provocatively for her age;

c. Plaintiff appeared bruised and scarred in addition to being underaged and dressed provocatively while in the presence of Defendants' employees;

d. Plaintiff appeared under the influence of drugs and alcohol (i.e. glossy-eyed, smelling of marijuana, and swaying) while in the presence of Defendants' employees;

e. Plaintiff and her trafficker went days without housekeeping services;

f. Despite foregoing housekeeping services, Plaintiff's trafficker would request towels and sheets multiple times a day, every day that had to either be left at the Motel room door or picked up by Plaintiff's trafficker in the lobby;

g. Because housekeeping had been forgone for days at a time, Plaintiff's trafficker would leave behind trash can(s) full of used condoms and empty bottles of lubricant along with tips for housekeeping upon checkout;

h. Plaintiff's trafficker would arrange for many men per night to drive past the front office in clear view of Defendants' employees, park in the parking lot, stay at Defendants' Motel only 15 to 20 minutes while they had sex with J.F., before once again driving past the front desk in clear view as they left;

i. Plaintiff's trafficker would become angry and abusive towards Plaintiff, and the two would yell at each other or fight such that they would be loud, throw things and

damage the room, and simply act and yell in a manner that others, including motel staff, could hear;

64.

Defendants knew and should have known that their Motel was the subject of:

a. Multiple women soliciting themselves out front of the property and in the parking lot;

b. Pimps selling drugs in the parking lot;

c. The smell of marijuana pervasive throughout both the motel and parking lot;

d. Cars with "johns" coming, going, and passing the front desk after spending only 15 to 20 minutes at the motel at all hours of the night.

65.

Defendants knew and should have been aware that the above are signs of trafficking in the hospital industry such that thew knew or should have known of Plaintiff's trafficking.

66.

Defendants knew and should have known – upon information and belief – that there were reviews online and customer complaints stating there are drug sales at the Motel and prostitutes soliciting themselves openly in the parking lots and off balconies.

67.

Defendants should have known that by failing to correct or warn of the condition at their property (i.e. allowing crime to reign freely and without consequence for the sake of profit) they made Plaintiff's trafficking and multiple rapes foreseeable.

24

68.

Defendants knew and should have known that they had to hire security, contract police, or implement other reasonable measures (i.e. requiring I.D.'s for all patrons, not allowing 15 to 20-minute visits to the Motel; requiring housekeeping services every 48 hours; requiring employees to call the police upon suspicion of drug use or prostitution, and others crimes and be trained to recognize the same).

## IV. COUNT 1: TVPRA CIVIL BENEFICIARY CLAIMS

69.

The Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1595(a) ("TVPRA") provides a civil cause of action to victims like J.F. against "[whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter. . ."

70.

Defendants "knowingly benefited" from J.F.'s trafficking because:

a. Spinks rented rooms at Defendants' Motel; and

b. Defendants collected revenue from the room rentals by accepting payment for said rooms.

71.

Defendants took part in a common undertaking involving risk or profit with the traffickers because:

25

a. Defendants directly rented rooms to Spinks for which they received money and/or United States currency;

b. Defendants directly rented rooms to Spinks when they knew or should have known Spinks was engaged in sex trafficking Plaintiff;

c. After renting rooms to Spinks, when they knew or should have known Spinks was engaged in sex trafficking Plaintiff, Defendants continued their business relationship with Spinks by continuing to rent rooms to him while they knew or should have known Spinks was engaged in sex trafficking Plaintiff;

d. Defendants had a continuous business relationship with Plaintiff's traffickers such that Defendants established a pattern of conduct with those traffickers;

e. After renting the room for the first night, Plaintiff's traffickers had prior commercial dealings with Defendants and then reinstated those dealings;

f. Defendants associated with Plaintiff's trafficker(s) in an effort to force Plaintiff to serve Defendants' business objectives;

g. Upon information and belief, Defendants steered Plaintiff's trafficker(s) to certain areas of the hotel where its less likely they would be found by law enforcement.

h. Upon information and belief, Defendants instructed staff not to call the police about crime and criminal acts on the property;

i. Defendants owned, operated, and maintained the Motel 6 Greensboro in question; and

j. On every occasion Defendants rented Spinks a room, they received money and/or United States currency in exchange.

72.

Plaintiff's traffickers' undertaking with Defendants violated the TVPRA with respect to Plaintiff because:

a. Plaintiff's trafficker forced Plaintiff to participate in commercial sex acts at Defendants'

Motel by, among other reasons, hitting her and threatening acts of violence against her and her family;

b. Plaintiff's trafficker kept Plaintiff under his control and in a repeated pattern of having to participate in commercial sex acts at Defendants' Motel by, among other reasons, not allowing J.F. access to money and keeping her under a cocktail of drugs;

c. Plaintiff's trafficker harbored Plaintiff at Defendants' Motel for the purpose of Plaintiff participating in commercial sex acts at the property;

d. The trafficker transported Plaintiff to Defendants' Motel for the purpose of Plaintiff participating in commercial sex acts at the Motel;

e. The commercial sex acts occurred at Defendants' Motel in rooms rented by Plaintiff's

trafficker;

f. The traffickers used force, threats of force, fraud, and coercion to cause Plaintiff to participate in commercial sex acts at Defendants' Motel;

g.  The trafficker threatened Plaintiff with violence and used this tactic to cause Plaintiff to engage in commercial sex acts at Defendants' Motel;

h.  The trafficker de-frauded Plaintiff by falsely telling Plaintiff that they would take care of Plaintiff and make her money, and then forcing Plaintiff to be sold for sex at Defendants' Motel;

i.  The trafficker knowingly, recruited, enticed, harbored, transported, advertised, maintained, and solicited Plaintiff to engage in commercial sex acts in Defendants' Motel rooms that the traffickers rented from Defendants;

j.  Buyers came to Defendants' Hotel, purchased the "right" to have sex with Plaintiff from her trafficker, and then the buyers raped Plaintiff at Defendants' Motel;

k.  Plaintiff's trafficker was aware that J.F. was not yet eighteen years of age but nevertheless sold her for commercial sex at Defendants' Motel;

l.  The trafficker utilized Defendants' wireless internet connection to arrange for the commercial sex acts and post nude and under-aged photos of Plaintiff; and

m.  Other actions to be proven at trial.

73.

The venture in which Defendants participated affected interstate commerce for numerous reasons including the sale and use of condoms, the purchase and use of cleaning supplies from out of state, the use of interstate highways to transport Plaintiff to the Motel by her trafficker (and their associates), and other reasons to be proven at trial.

74.

As shown above, Defendants had – at minimum – constructive knowledge that Plaintiff was being trafficked for sex at Defendants' Motel.

75.

Defendants directed, operated, supervised, monitored, managed, and/or employed all employees, managers, housekeepers, and other staff at Defendants' Motel at all relevant times, giving Defendants specific and direct knowledge of sex trafficking, including the sex trafficking that victimized Plaintiff, and other crimes at the Motel during the relevant period.

76.

Defendants directed, operated, supervised, monitored, managed, and/or employed all employees, managers, housekeepers, and other staff at the Motel 6 Greensboro and, given the condition of those motels, Defendants had specific and direct knowledge of what sex trafficking and its signs looked like.

## V. COUNT 2: PREMISES LIABILITY LAW

77.

Defendants owed a duty to Plaintiff to exercise ordinary care in keeping the premises and approaches of the Motel safe and to not negligently create and maintain the condition(s) that caused her injury.

78.

Defendants had actual and constructive knowledge of criminal activity at the Motel that made the repeated raping of Plaintiff foreseeable to Defendants.

79.

Defendants knew or should have known of steps to take to prevent the Motel from being used as a venue for sex trafficking, rape, forced drug use, assault, and other crimes perpetrated on Plaintiff but negligently failed to correct the conditions or warn Plaintiff.

80.

Defendants were negligent and said negligence proximately caused Plaintiff's injuries in the following ways:

    a.    Failing to use ordinary care to keep the premises safe;

    b.    Negligently failing to provide appropriate and effective security personnel during Plaintiff's sex trafficking at the Motel;

    c.    Negligently failing to properly inspect and maintain the premises;

    d.    Negligently failing to properly train and supervise its employees regarding sex trafficking and other sex crimes at the Motel;

    e.    Negligently failing to properly retain, hire, train, and supervise said employees;

    f.    Negligently failing to ensure business policies, systems, and security were adequately followed and implemented;

    g.    Negligently failing to respond to online reviews and publicly available

information;

h.    Negligently failing to prevent loitering, pandering, prostitution and trespassing;

i.    Negligently failing to remove loiterers, panderers, prostitutes, pimps and trespassers;

j.    Negligently failing to inspect, patrol, or appropriately monitor the property;

k.    Negligently failing to provide adequate lighting and employ other available security measures, personnel, and devices, such as controlled access, adequate signage, cameras, patrols, inspections, physical, and other landscaping adjustments, and other measures available;

l.    Negligently failing to remediate a long history of crime at the Motel;

m.    Negligently failing to warn invitees of known hazards at the property;

n.    Negligently representing to invitees that the property was safe; and

o.    Other negligent acts that violated North Carolina common law to be proved at trial.

81.

Defendants also had a duty NOT to aid in the creation of, and NOT to maintain, a continuous and regularly repeated dangerous criminal condition at the Motel.

82.

Defendants were aware of the dangerous criminal condition at the Motel and negligently allowed that condition to continue.

83.

Defendants maintained a dangerous, criminal condition at the Motel.

## VI. CAUSATION AND DAMAGES

84.

Each of the forgoing acts and omissions constitute an independent act of negligence on the part of Defendant, and one or more or all of the above stated acts were the proximate causes of the injuries and damages sustained by the Plaintiff.

85.

As a direct and proximate result of Defendants' acts and omissions, Plaintiff suffered substantial physical, emotional, and psychological harm and other damages.

86.

Defendants are joint and severally liable for Plaintiff's damages, past future, and present.

87.

Defendants are liable for Plaintiff's damages in an amount to be proven at trial, including reasonable attorneys' fees under 18 U.S.C. § 1595(a) and punitive damages.

88.

Plaintiff brings each and every claim for damages permissible under the law against Defendants for injuries suffered in the incident at issue, and to recover for all special damages, economic losses, medical expenses, necessary expenses, and all compensatory, special, actual, general, and punitive damages permissible under the law, including, but not limited to:

a. Actual damages;

b. Direct damages

c. Personal injuries;

d. Past, present and future pain and suffering;

e. Disability;

f. Disfigurement;

g. Mental anguish and emotional distress (until trial and in the future);

h. Loss of the capacity for the enjoyment of life;

i. Loss of earning capacity;

j. Physical pain and suffering;

k. Emotional impairment;

l. Unjust enrichment;

m. Penalties;

n. Lost wages;

o. Diminished capacity to labor;

p.  Incidental expenses;

q.  Past, present and future medical expenses;

r.  Pre- and post-judgment interest at the maximum legal rates;

s.  Permanent injuries; Attorney's fees;

t.  Punitive damages;

u.  Exemplary Damages; and

v.  Consequential damages to be proven at trial.

## VII. JURY TRIAL

89.

Plaintiff demands a jury trial on all issues.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for a judgment against Defendants and for the following:

1)  That process and summons issue requiring each Defendant to appear as provided by law to answer the allegations of the Complaint;

2)  Plaintiff be awarded actual damages in amounts to be shown at trial jointly and severally against Defendants;

3)  Plaintiff be awarded all general, special, compensatory, economic, and other allowable damages in accordance with the enlightened conscience of an impartial jury from Defendants jointly and severally;

4)  Plaintiff be awarded her attorneys' fees and case expenses as allowed by law;

6)   Punitive damages be imposed upon Defendant;

7)   Plaintiff be provided with a trial by jury; and

8)   Plaintiff have such other relief as this Court deems just and appropriate under

the circumstances.

This 25th day of June 2025.

**THE STODDARD FIRM**
*/s/ Matthew B. Stoddard____*
Matthew B. Stoddard, Esq.
North Carolina Bar No. 62220
THE STODDARD FIRM
1534 N Decatur Road
Atlanta, GA 30307
P: 470-467-2200
F: 470-467-1300
matt@LegalHelpGa.com
***Attorneys for Plaintiff***
